UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MONICA JUNE RICHARD, ET AL.** | \*CIVIL NO. 6:15-0654 |
| **VERSUS** | \*JUDGE DOHERTY |
| **INLAND DREDGING COMPANY, LLC** | \*MAGISTRATE JUDGE HANNA |

MEMORANDUM RULING

Before the Court is the Motion for Sanctions Pursuant to Rule 36 and Inherent Powers of the Court for Misrepresentations in Discovery, Failure to Admit and Spoliation filed by plaintiffs John Richard, Sr., Monica June Richard, individually and on behalf of their minor child, M.E.R. ("Richard"). [rec. doc. 38]. Inland Dredging Company, LLC ("Inland") has filed Opposition. [rec. doc. 40].

For the following reasons, Richard's Motion for Sanctions [rec. doc. 38] is **denied**.

Background

Richard filed suit on March 19, 2015 seeking damages for injuries allegedly sustained on March 25, 2014, when, while climbing down the stairs from the crane he was operating on a crane barge for a dredge barge, the Kelly L, he allegedly fell as a result of a "gap in the steps/stairs" which also were not equipped with a handrail. [rec.

1

doc. 1, ¶9].  On January 20, 2016, Richard propounded Interrogatories.  With respect to the stairs in question, Interrogatory number 10 requested Inland to identify "(h) the number of treads on the stairs/steps at the time of the incident" and "(c) whether the stairs/steps were equipped with any handrails."  Interrogatory 12 requested information about modifications or changes to the steps in question after the accident. Interrogatory 6 asked Inland to identify any photographs of the "equipment and/or barges where the incident occurred. . . "  [rec. doc. 38-4, pg. 5-7].

On March 18, 2016, Inland responded to Interrogatory 10 as follows: "The Defendant is still investigating and will supplement this Interrogatory in the near future."  Inland responded to Interrogatory 12 as follow: "The Defendant objects to Interrogatory No. 12 as any information related to post-remedial measures is not calculated to lead the discovery of admissible evidence." Inland responded to Interrogatory 6 regarding photographs as follows:  "None are presently known to exist." [rec. doc. 38-5, pg. 11-12].

Richard's deposition was taken on April 8, 2016.  Plaintiff testified that at the time of the accident the step was not "high enough, close enough to the top of the track" and that it was about "a foot-and-a-half lower than the top of the track." After the accident, while declining to say that a step was previously missing, plaintiff testified that "they added [a step] that  wasn't there before." [rec. doc. 38-6, pg. 6-7].

2

On April 28, 2016, Inland supplemented its prior discovery responses. With respect to Interrogatory 10(h), Inland stated "The defendant presently believes there to have been five steps at the time of the accident - the same as exist today." With respect to Interrogatory 12 Inland stated "The Defendant believes that a handrail may have been installed after the incident is alleged to have occurred."

On May 24, 2016, Richard propounded Requests for Admissions. Request 5 asked Inland to admit or deny "that at the time of the incident the steps/stairs leading from the crane on the crane barge were missing a step." [rec. doc. 38-8, pg. 4].

On June 23, 2016, Inland denied Request for Admission 5. [rec. doc. 38-9, pg. 3]. In response to an accompanying Interrogatory asking for all facts that support a denial, Inland responded "The Defendant does not believe that the steps to the crane were broken or missing." [rec. doc. 40-8].

On June 29, 2016, Richard deposed Tim Dyer, the Inland Project Manager. Dyer testified that at the time of the accident there were four steps. After the accident Jeff Barfield, a leverman and welder/fabricator, cut out the steps and put in five steps, which decreased the space between each step. Richard's counsel reserved his rights to pursue the issue further and defense counsel stated that "based on any testimony today we'll review and amend any necessary discovery responses." [rec. doc. 38-11, pg. 4-6, rec. doc. 40-2, pg. 1-3, depo. pgs. 107, 110-112, 114].

Dyer additionally testified that he investigated the accident. In connection with his investigation, he "probably" took photographs as that was his normal procedure, that he "would have taken photographs" and "would have took a picture of the steps", but "I don't know", and "I can't tell you that I took the pictures, because I have no way of even looking them up." This is so because Dyer testified that any such photographs were on his office barge in his laptop and Inland-owned hard drive, which barge sank on April 7, 2016. If somebody would have asked for the photographs before the barge sank, Dyer "absolutely" could have produced them. [rec. doc. 38-11, pg. 8-11, depo. pg. 139-142].

Mr. Dyer also testified that during the course of the litigation, he was never asked to produce any photographs and was never asked what changes, if any, were made to the steps. [rec. doc. 38-11, pg. 14, depo. pg. 149].

On July 19, 2016, Inland supplemented its prior discovery responses. In response to Interrogatory 10(h) Inland stated "the Defendant presently believes there to have been four steps at the time of the accident." In response to Interrogatory 12, Inland stated "The defendant believes that a handrail was installed after the alleged accident. Further, the Defendant believes that the original four steps were removed and five steps installed. This modification was made by Mr. Barfield with the knowledge of Mr. Tim Dyer." [rec. doc. 38-12, pg. 6]. The cover letter enclosing these supplemental responses indicates that following Mr. Dyer's deposition, Mr. Dyer

located his investigative file on the computer aboard the Kelly L.  The file contained no photographs and Mr. Dyer had "confirmed for me that if there had been any pictures, they would have been contained with these documents."  A copy of the entire file was provided to Richard's counsel. [rec. doc. 40-4].

In Opposition to the instant Motion, Inland submits the affidavit of Tim Dyer wherein he states that he normally would take photographs, however, he could not recall if he "did in fact take photographs of the crane barge stairs at issue. . . ."  He further states that his laptop was lost in a barge sinking incident, on which was his copy of the investigative file.  Following his deposition, he searched for another copy of the investigative file and he "found a copy on a computer still aboard the Kelly L dredge."  Dyer affirms that the file "did not contain any photographs.  Had I taken photographs of the crane barge stairs at issue they would be contained within this investigative file."  Dyer further affirms that at the time of the accident, the crane barge stairs consisted of four stairs, none of which were missing or broken.  After the accident, the four crane barge stairs were replaced with a set of five stairs.  These stairs "did not replace any missing or broken stairs form the original set of four (4) stairs." [rec. doc. 40-3].

## Law and Analysis

The Court's inherent power to issue sanctions is limited.  The Fifth Circuit has confined such sanctions to instances of bad faith or willful abuse of the judicial process.  *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990) (citations omitted).  The Fifth

Circuit has further noted that in the context of the federal court's inherent power, a court must make a specific finding that the sanctioned party acted in bad faith[1], and that "bad faith" is judged by "necessarily stringent" standards. *Pressy,* 898 F.2d at 1021. Bad faith "is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; . . . it contemplates a state of mind affirmatively operating with furtive design or ill will." *Turfgrass Group, Inc. v. Northeast Louisiana Turf Farms, LLC*, 2013 WL 6145294, *3 (W.D. La. 2013) (citations omitted). The Court's mere displeasure is not enough. *Bergquist v. FyBX Corp.*, 2003 WL 22384934, *2 (E.D. La. 2003) *citing Elliot v. Tilton*, 64 F.3d 213, 217 (5th Cir.1995). Thus, the threshold for imposition of such sanctions is "high." *Kipps v. Callier*, 197 F.3d 765, 770 (5th Cir. 1999). Indeed, the Supreme Court has cautioned that "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. Nasco, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27 (1991).

Rule 37(c)(2) addresses whether a failure to admit is sanctionable. That Rule provides in pertinent part:

> (2) If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that

---

[1] *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995).

proof. The court must so order unless:
(A) the request was held objectionable under Rule 36(a);
(B) the admission sought was of no substantial importance;
(C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
(D) there was other good reason for the failure to admit.

Thus, under Rule 37(c)(2)(C) a party should not be sanctioned if its denial was based on a "reasonable" belief that it "might prevail on the matter." *David v. Katz*, 2000 WL 1682999, *2 (E.D. La. 2000). One commentator has stated that the "reasonable grounds" exception is "the most important" consideration that justifies the "refusal to make an award under Rule 37(c)." *Id. citing* 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2290, at 711-12 (1994).

In general, spoliation of evidence "is the destruction or the significant and meaningful alteration of evidence." *Guzamn v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). The Fifth Circuit permits "an adverse inference against the spoliator or sanctions against the spoliator only upon a showing of 'bad faith' or 'bad conduct.'" *Guzman,* 804 F.3d at 713 *citing Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). "Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzamn*, 804 F.3d at 713 *citing Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998). Mere negligence is generally insufficient. *Vick v. Texas Employment Comm.*, 514 F.2d 734, 737 (5th Cir. 1975).

7

Rule 37(e) provides sanctions against a party for the failure to preserve electronically stored information. *See* Fed. R. Civ. P. 37(e)  That Rule provides

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court: (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment.

A Court must determine that four predicate elements are met under Rule 37(e) before turning to the sub-elements of (e)(1) and (e)(2): (a) the existence of ESI of a type that should have been preserved; (b) ESI is lost; (c) the loss results from a party's failure to take reasonable steps to preserve it; and (d) it cannot be restored or replaced through additional discovery.  *Konica Minolta Business Solutions, USA v. Lowery Corporation*, 2016 WL 4537847, *2 (E.D. Mich. 2016).  Only if all four elements are established can the Court consider sanctions under subsection (e)(1) or subsection (e)(2).  *Id*. at *3. These subsections have different requirements before sanctions can be imposed and can lead to different sanctions.  *Id*.

In considering subsection (e)(1) sanctions after finding the predicates exist, a court must first find a party is prejudiced by the loss of information.  *Id*. If prejudice is found, the Court may order measures no greater than necessary to cure the prejudice. *Id*.

8

Significantly, subsection (e)(1) does not contain an "intent" requirement; a party need not act willfully, deliberately, intentionally, or with any objective or subjective bad faith.  *Id.*

Under subsection (e)(2), however, before a Court can impose the sanction of an adverse presumption, an adverse instruction to the jury, or default judgment, it must find that the party that caused the loss "acted with the intent to deprive another party of the information's use in the litigation." *Id*.  The Advisory Committee Notes regarding subsection (e)(2) reject cases that authorize the giving of an adverse-inference instruction on a finding of negligence or gross negligence.  Fed. R. Civ. P. 37(e)(2), Advisory Committee Notes, 2015 Amendment. By this Motion, plaintiff seeks sanctions under sub-section (e)(2), an adverse presumption or adverse instruction to the jury.

The party alleging spoliation bears the burden of proof.  *Terral v. Ducote*, 2016 WL 5017328, *3 (W.D.  La. 2016); *See also Martinez v. City of Chicago*, 2016 WL 3538823, *24 (N.D. Ill. 2016) ( noting that "Plaintiff has failed to meet his evidentiary burden . . .").

<u>Response to Interrogatory Nos. 10 and 12</u>

In light of the above factual synopsis, plaintiff has not met the "high" threshold for the imposition of sanctions.  Although Inland initially failed to provide plaintiff with accurate information regarding the construction and modification of the stairs, it

9

appears to this Court that any such deficiencies in its discovery responses was inadvertent and that the responses were not provided in bad faith, or in any willful attempt to abuse the judicial process.  To the contrary, the record is clear that Inland continued to investigate and supplement its responses as new information became available.  It appears to the Court that Inland was simply unaware that the steps had been replaced until Mr. Dyer disclosed this information during his deposition.  While Inland should have interviewed Dyer prior to submitting its initial discovery responses[2], the failure to do so appears to have been an error in judgment as to who might have the necessary information or lack of adequate communication within Inland's internal chain of command, rather than a bad faith or purposeful attempt to hide evidence.  Indeed, a finding of bad faith or a purposeful attempt to hide evidence is belied by the fact that Inland disclosed Dyer as a person who might have knowledge about the incident  in its response to Interrogatory Number 3 and again in its supplemental responses to Interrogatory Number 4. [rec. docs. 38-5, pg. 5; 38-7, pg. 4; 38-12, pg. 4].

For these reasons, sanctions will not be imposed on Inland with respect to these discovery responses.

Response to Request for Admission No. 5

Inland likewise may not be sanctioned for its failure to admit that a stair was

---

[2]Inland's initial discovery responses indicate that only Christie Henson and Richard Jackson provided the information utilized to respond to the discovery, and although the signature is somewhat unclear, it appears that Richard Jackson certified the responses. [rec. doc. 38-5, pgs. 4 and 19].

"missing" at the time of the incident.  It appears to the Court that a stair was not "missing" at the time of the incident, but rather that after the incident the set of four stairs were simply replaced by new a set of five stairs.  Furthermore, although not requested by Request for Admission Number 5, there is nothing before this Court supporting that any of the stairs were "broken" at the time of the incident.  To the extent that the response hinges on the proper interpretation of "missing" or "broken", given Dyers deposition testimony and affidavit submitted in opposition tot he instant Motion, Inland's denial is deemed by this Court as based on a "reasonable" belief that Inland "might prevail on the matter" at trial, and as such, is not sanctionable  under Rule 37(c)(2)(C).

     For these reasons, sanctions will not be imposed on Inland with respect to this discovery response.

<u>Photographs of the Stairs</u>

     While the Court is troubled that Inland made no request to Dyer for photographs which may have been taken by him prior to submitting its initial discovery responses, spoliation sanctions, and more specifically, adverse inference sanctions under subsection (e)(2) requested by plaintiff, are not appropriately granted. Plaintiff has not satisfied his burden of demonstrating that all four predicate elements of Rule 37(e) have been met.  Thus, there is no need to reach the sub-elements of (e)(1) or (e)(2).  More specifically, in light of Dyer's ambiguous deposition testimony as to whether

photographs were, in fact, taken, the cover letter of counsel submitting supplemental discovery responses in which counsel chronicles the post-deposition investigation taken by Dyer and production of his investigative file which does not contain photographs, and Dyers' affidavit submitted to this Court in opposition to this Motion in which Dyer confirms that , the latter two of which confirm that had there been any photographs of the stairs, they would have been contained within his investigative file, the plaintiff has not shown the existence of photographs which could have been lost, in the first instance, or that should have been preserved.

    Furthermore, even if this Court reached subsection (e)(2) for imposition of the requested an adverse presumption or adverse instruction to the jury, plaintiff has not shown the requisite intent.  This Court simply cannot find that the alleged loss of the alleged photographs was in any way intentional.  To the contrary, the record before this Court confirms that the barge containing the computer, in which the alleged photographs were contained, sank, and there is absolutely nothing before this Court which  supports a finding the Inland intentionally sunk the barge in order to hide or destroy this alleged evidence.  Likewise, there is nothing before this Court which supports a finding that the barge sank as a result of any bad faith actions committed by Inland to destroy or hide evidence from the plaintiff. To the contrary, it appears that the sinking of the barge was unrelated to this litigation.

For these reasons, sanctions will not be imposed on Inland with respect to the alleged photographs of the stairs in question.

Signed in Lafayette, Louisiana this 29th day of September, 2016.

_____
**PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE**